**Elsie V. LORA, d/b/a Putt-Putt Fun Center, Appellant,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Respondent.**

No. 62921.

Supreme Court of Missouri, Division No. 1.

July 14, 1981.

Sawyer Marglous and Warren Grauel, Clayton, for appellant.

Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Senior Judge.

Appellant filed in the Missouri Court of Appeals, Eastern District, a petition for judicial review from a final decision of the Administrative Hearing Commission which affirmed an assessment by the Director of Revenue for unpaid sales tax, interest and a late filing penalty. The Court of Appeals ordered the case transferred to this court for lack of jurisdiction in the Court of Appeals. We have jurisdiction because construction of the revenue laws of the state is involved. Mo.Const. Art. V, § 3. We reverse and remand with directions.

This case is an outgrowth of the decision of this Court in *Blue Springs Bowl v. Spradling*, 551 S.W.2d 596 (Mo.banc 1977). In that case this court upheld a revised Revenue Rule 49, effective April 30, 1974, which, in a reinterpretation of § 144.020.1(2) RSMo, stated that a sales tax was due on gross receipts derived from fees or charges paid for participation in bowling in any place of amusement, entertainment or recreation. For many years prior to that date the Department of Revenue had interpreted § 144.020.1(2) as not imposing a tax on bowling receipts.[1]

Subsequent to the decision in *Blue Springs Bowl* the Department of Revenue conducted an audit of Elsie Lora, d/b/a Putt-Putt Fun Center, for the period from May 1, 1974 to September 30, 1978. Based on that audit the Director of Revenue, on

---

1. As pointed out in footnote 3 to *Blue Springs Bowl v. Spradling, supra* the rules of the Department of Revenue from August 21, 1937 to April 30, 1974, provided that sales tax was not due on bowling receipts in places of amusement, entertainment or recreation.

January 11, 1979, assessed appellant Lora the sum of $62,570 on receipts from the miniature golf course for the period in question. The sum assessed consisted of $46,705.13 for tax, $11,195.00 for interest, and $4,670.54 for a ten percent penalty under § 144.250.1, RSMo 1978.

Pursuant to § 161.337, RSMo 1978, appellant filed a petition for reassessment before the Administrative Hearing Commission, contending:

1. that she was not liable for any tax because for many years the state had taken the position in its Revenue Rules that sales tax was not due on a business engaged in operating a miniature golf course and related activities, and that, after changing its position in 1974 without any statutory change, it failed to notify appellant of its reinterpretation of the statute and she was not aware of any obligation to pay sales tax and had not collected any sales tax;

2. that the portion of the assessment which is for a period in excess of two years from the date of assessment is barred by the Statute of Limitations, § 144.220, RSMo 1978; and

3. that no penalty should be assessed under § 144.250, RSMo 1978.

The Petition for Reassessment was submitted to the Administrative Hearing Commission on the following agreed statement of facts:

"1. The taxpayer, a housewife unschooled and inexperienced, took over the operation of her husband's business upon his demise August 23, 1973, and has operated the business to current date.

2. The business activity is in the amusement field consisting of miniature golf and allied games of entertainment in which a fee is charged to the public to play and participate.

3. At all times herein the taxpayer did not collect sales tax from patrons and customers on the reasonable knowledge and belief that the business activity was excluded from the purview of the Act. That during all of said period the taxpayer exercised reasonable prudence and good faith without intention to evade, conceal, deceive, or otherwise mislead taxing authorities.

4. In *Blue Springs Bowl v. Spradling*, 551 S.W.2d 596 (1977), the Supreme Court held that § 144.020.1(2) taxes receipts received from bowling in a commercial establishment. No measures were taken by the Department of Revenue to notify the taxpayer or others similarly situated following the opinion in the *Blue Springs Bowl* case, *supra*, in 1977 other than to publish its rulings that it was now holding such taxpayer's business subject to and included in the provisions of the statute.

5. That at all times herein there was in full force and effect § 144.220, RSMo 1969 commonly known as a Statute of Limitations of two years.

6. It is stipulated that the figures contained in the audit accurately reflect the sales or purchases of the taxpayer and that in the event the Department of Revenue's determination to tax these transactions is upheld, the amount of the sales/use tax and local taxes assessed is correct."

The Administrative Hearing Commission upheld the assessment of the Director of Revenue, holding that by issuing Revised Rule 49 and filing a certified copy thereof with the Secretary of State, the Department of Revenue gave all the notice that was required. Personal notice to the taxpayer was not required. Next, the Commission held that none of the assessment was barred by the Statute of Limitations and that a penalty was properly assessed under § 144.250.

On appeal to this Court appellant has abandoned her contention that she was not subject to tax because she did not receive notice of Revised Revenue Rule 49 from the Director of Revenue. She has conceded that tax is due for the last two years of the

period covered by the assessment. The only issues raised on this appeal are that the earlier portion of the assessment is barred by § 144.220, the two year Statute of Limitations, and that no penalty can be assessed under the terms of § 144.250.

## STATUTE OF LIMITATIONS ISSUE

The Sales Tax Act provides its own statute of limitations. Section 144.220 RSMo 1978 thereof provides:

"Additional Assessment made within two years—Except in the case of a fraudulent return, or neglect or refusal to make a return, every notice of additional amount proposed to be assessed hereunder shall be mailed to the person within two years after the return was filed or was required to be filed."

Under that section the assessment of additional tax is limited by the two year period specified except where a fraudulent tax return is filed or the taxpayer neglects or refuses to make a return. In this case neither a fraudulent return nor a refusal to make a return is involved. Therefore, the legal issue for decision is whether, under the stipulated facts in the case, taxpayer "neglected" to make a return.

It is the contention of taxpayer that when § 144.220 speaks of "neglect" to make a return, it means that the taxpayer negligently failed to file a return. She points out that under the stipulated facts she was not negligent because she "did not collect sales tax from patrons and customers on the reasonable knowledge and belief that the business activity was excluded from the purview of the Act" and because she "exercise reasonable prudence and good faith without intention to evade, conceal, deceive, or otherwise mislead taxing authorities."

On the other hand, it is the position of the Director that "neglect" to file a return, as used in § 144.220, equates with mere "failure" to file a return. In other words, it simply "connotes a failure to act." Since taxpayer failed to file a return for the years in question, the Director argues that the two year limitation does not apply.

These conflicting interpretations require that we determine the meaning of the term "neglect" as used in § 144.220.

We note at the outset, as stated in an earlier opinion of the St. Louis Court of Appeals, that "[M]any words have various shades of meaning in legal usage, and the same is true in the case of the verb 'neglect'. In some instances it may imply a mere failure or omission to do something without regard to the gravity of the reasons which prompted the failure to act, while in other instances it is used in the sense of a designed refusal or unwillingness to perform one's duty with respect to a matter with which one is charged with the duty to act." *In re Perkins*, 117 S.W.2d 686, 692 (Mo.App.1938). An examination of the meanings ascribed in Webster's Third International Dictionary to "neglect" and "neglectful" confirms what the court said in *Perkins*. It also discloses that the word also can mean negligence. Definitions and synonyms listed include negligent as well as failure, disregard, overlook, and careless. Which meaning the legislature intended by the term used in § 144.220 must be based on an examination of the entire section. In making that determination, "the general rules of statutory construction require that meaning be given to each word used in a legislative enactment, insofar as possible, and one word of a statute should not be considered a needless repetition of another." *State ex rel. Thompson-Stearns-Roger v. Schaffner*, 489 S.W.2d 207 (Mo.1973). *See also Stewart v. Johnson*, 398 S.W.2d 850 (Mo.1966).

Applying this test, what meaning should we ascribe to the provision in § 144.220 which establishes an exception when taxpayer neglects to file a return? In resolving this question, we first look to the other exceptions created. Exception 1 makes the limitation inapplicable if a fraudulent return was filed. Exception 3 (refusal to make a return) applies when there is a

conscious refusal by taxpayer to file a return. The meaning of these two exceptions is clear. We need to adopt an interpretation of the other exception involving neglect to file a return, if reasonably possible, which gives it a meaning that is separate from the other two exceptions (fraud and refusal to file) and avoids making any of the terms a needless repetition of one of the others.

If, as the Director contends, "neglects" means mere failure to file a return, then it covers each and every instance in which no return is filed. It is all inclusive. Nothing other than failure to file is necessary to make the statute of limitations inapplicable. Such an interpretation causes the third exception of refusal to file a return to become surplusage. It is unnecessary, and therefore meaningless, because mere failure to file includes refusal to file. Such an interpretation violates the rule of construction stated in *Thompson-Stearns-Roger* and in *Stewart* that meaning and effect should be given to each word, if possible, and that one word should not be construed so as to cause it to be included in or a repetition of another word in the statute.

If, on the other hand, we treat "neglect", as used in § 144.220, as referring to negligent or careless failure to file a return, then all three exceptions stated in § 144.220 have meaning and significance. Under Exception 1 the statute is tolled if a fraudulent return is filed. Under Exception 2 the statute is tolled if taxpayer negligently or carelessly fails to file a return, and under Exception 3 the statute is tolled if taxpayer is shown to have consciously refused to file a return.

We conclude and hold that "neglect * * * to make a return", as used by the legislature in § 144.220, means a negligent or careless failure to file a return.

Under the stipulated facts on which this case was submitted, appellant was not negligent or careless. She exercised "reasonable prudence and good faith" on the basis of a reasonable belief that her business was not covered by the Act. Therefore, the exception relied on by the Director did not apply. Accordingly, the two year statute of limitations governs and taxpayer is liable only for that portion of the assessment not barred by § 144.220.

## 10% PENALTY ISSUE

■ The Director assessed a penalty of 10 percent against taxpayer on the basis of § 144.250.1, RSMo 1978 which provides:

"Estimate of Delinquent tax—assessment—penalty—notice—1. Except in cases of fraud or evasion, if a person neglects or refuses to make a return and payment as required by sections 144.010 to 144.510, the director of revenue shall make an estimate based upon any information in his possession or that may come into his possession of the amount of the gross receipts of the delinquent for the period in respect to which he failed to make return and payment, and upon the basis of said estimated amount compute and assess the tax payable by the delinquent, adding to such sum a penalty equal to ten percent thereof."

This section authorizes a 10 percent penalty if taxpayer "neglects or refuses" to make a return. Those are the same terms used in § 144.220, the limitations section, and should be interpreted consistently with the interpretations which we have placed on the terms in that section. Since there is no evidence that taxpayer refused or negligently or carelessly failed to file a return, there was no basis for the assessment of a 10 percent penalty.

## CONCLUSION

The decision of the Administrative Hearing Commission is reversed and the case is remanded for entry of an assessment which is consistent with the views herein expressed.

MORGAN, P. J., DONNELLY, C. J., RENDLEN, J., and GUNN, Special Judge, concur.

BARDGETT, J., not participating.