Gerald J. BAMBERGER,
et al., Appellants,

v.

Charles F. FREEMAN, et
al., Respondents.

No. ED 92319.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 27, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 7, 2009.

Application for Transfer Denied
Jan. 26, 2010.

Allen Allred, Booker T. Shaw, Mike W. Bartolacci, Saint Louis, MO, for Appellants.

Timothy J. Phillips, Saint Louis, MO, for Respondents, G & P Truck Lines, Inc. and Charles Freeman.

Bradley S. Russell, Tracy M. Hayes, Overland Park, KS, for Respondent, Oak River Insurance Company.

## OPINION

GLENN A. NORTON, Presiding Judge.

Gerald J. Bamberger, as personal representative of the estate of Daniel Eckstein, and St. John's Mercy Health System, d/b/a St. John's Mercy Medical Center appeal the trial court's grant of summary judgment in favor of Charles F. Freeman, G & P Truck Lines, Inc., and Oak River Insurance Company (collectively referred to herein as "Defendants") on personal representative's survivorship action and St. John's action to enforce its hospital lien. We affirm.

## I. BACKGROUND

In January 2006, Daniel Eckstein was in a minor collision on Highway 44. Eckstein pulled over on the shoulder of the highway because of the accident, and while Eckstein was in the vehicle, a truck driven by Charles F. Freeman struck Eckstein's vehicle. Freeman was driving the truck in the course of his employment with G & P Truck Lines, Inc. As a result of the second accident, Eckstein's spine was fractured and he was rendered quadriplegic. Eckstein was hospitalized and treated at St. John's from January 2006 until April 2006, at which time he was discharged and returned home. On June 26, 2006, Eckstein filed a personal injury action against Freeman and G & P. St. John's filed a notice of statutory lien in the personal injury action in the amount of approximately $572,841 for the care and treatment St. John's provided to Eckstein.

Prior to the resolution of Eckstein's personal injury action, Eckstein died. The death certificate listed the cause of death as "complications of cervical spine fractures with quadriplegia." Following Eckstein's death, his attorney moved to dismiss the personal injury action and substitute the action with a wrongful death action filed by Eckstein's wife and mother. In April 2007, the trial court approved settlement of the wrongful death claim. Bamberger, as counsel for St. John's, attended the hearing and presented arguments concerning the hospital lien asserted by St. John's in the original personal injury action. The judgment approving the settlement found that no hospital or health practitioner liens attached to the proceeds of the wrongful death settlement and no settlement proceeds would be allocated to satisfy any liens. Thereafter, Eckstein's wife and mother executed a $1 million settlement agreement and release relinquishing any and all claims against Defendants.

In October 2007, Bamberger was appointed as personal representative of Eckstein's estate. Thereafter, Bamberger, in his capacity as personal representative, filed a survivorship action on behalf of the estate against Freeman and G & P, seeking to recover damages separate from the wrongful death settlement proceeds for Eckstein's personal injuries. In the same lawsuit, St. John's filed a separate claim against Defendants to enforce its hospital lien.

Defendants filed a joint motion for summary judgment on personal representative's and St. John's claims, asserting that: (1) the survivorship action was barred by collateral estoppel and res judicata because of the judgment approving the wrongful death settlement; (2) the survivorship action could not be maintained because the January 2006 accident caused

Eckstein's death; and (3) St. John's could not enforce its hospital lien. The trial court granted Defendants' motion for summary judgment but did not specify the grounds for its decision. Personal representative and St. John's now appeal.

## II. DISCUSSION

### A. Standard of Review

Our review of summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Although we view the record and construe all inferences favorably to personal representative and St. John's (the non-movants), facts set forth in support of Defendants' summary judgment motion are taken as true unless contradicted by personal representative and St. John's response. *See Id.* We will affirm the grant of summary judgment only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 377. Moreover, we must affirm the trial court's judgment if, as a matter of law, it is sustainable under any theory. *Stark Liquidation Co. v. Florists' Mutual Insurance Co.*, 243 S.W.3d 385, 392 (Mo.App. E.D.2007).

### B. No Error Granting Summary Judgment in Favor of Freeman and G & P on Personal Representative's Survivorship Action

In point one on appeal, personal representative and St. John's argue summary judgment was improper because the survivorship cause of action and action to enforce the hospital lien were not barred by collateral estoppel or res judicata. In point two on appeal, personal representative claims the survivorship cause of action was not barred by the wrongful death

claim. However, because our analysis of points three and four is dispositive as to the propriety of summary judgment in favor of Defendants, we need not consider points one and two on appeal.

In the third point on appeal, personal representative argues the trial court erred in granting summary judgment in favor of Freeman and G & P on personal representative's survivorship action because a genuine issue of material fact exists regarding whether Eckstein's death resulted from the January 2006 accident. We disagree.

Pursuant to Rule 74.04,[1] to be entitled to summary judgment, Defendants must show there was no genuine dispute of material fact and on these undisputed facts they were entitled to judgment as a matter of law. In personal representative's response to Freeman and G & P's motion for summary judgment as to his survivorship claim, personal representative was required to show that one or more of the material facts upon which Freeman and G & P base their motion was genuinely disputed. *Super v. White*, 18 S.W.3d 511, 518 (Mo.App.2000) (citing *ITT*, 854 S.W.2d at 381). A "genuine issue" of material fact exists if the record contains two possible, but contradictory accounts of the essential facts. *Id.* A "genuine issue" is one that is real, not merely argumentative, imaginary, or frivolous. *Id.* If the non-movant fails to show the existence of a genuine issue of material fact, judgment is proper for the movant. *Id.*

### 1. Personal Representative's Survivorship Action Barred as a Matter of Law

■ Here, Bamberger, as personal representative for Eckstein's estate, filed a survivorship action pursuant to section

1. All references to Rules are to Missouri Supreme Court Rules (2009).

537.020.1 RSMo 2000.[2] The statute states, in relevant part, that "[c]auses of action for personal injuries, *other than those resulting in death*" survive to the personal representative of the injured party. (emphasis added). Pursuant to section 537.080.1, if death results from circumstances entitling the decedent to an action for personal injury, the proper action is a wrongful death action filed by the survivors of the decedent. This wrongful death action is for damages suffered by the survivors as a result of the death, as well as for those "damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued." Section 537.090 RSMo Supp.2005. Thus, based upon these statutes, if Eckstein's death resulted from the January 2006 accident, a cause of action for wrongful death by his survivors is the proper remedy, and a survivorship action is barred as a matter of law.

## 2. No Genuine Issue of Material Fact Regarding the Cause of Eckstein's Death

As previously noted, personal representative argues there is a genuine issue of material fact regarding whether Eckstein's death resulted from the January 2006 accident. Personal representative bases his argument on the preliminary emergency room report, medical research, and the circumstances surrounding Eckstein's release from the hospital and subsequent abilities prior to his death. However, these exhibits and facts do not create a genuine issue of material fact.

The emergency room report states the diagnosis or cause of death was cardiopulmonary arrest. The diagnosis note from the emergency room physician states, "I suspect this patient probably had a massive pulmonary embolus as an etiology of his sudden demise." The certificate of death lists Eckstein's cause of death as "complications of cervical spine fractures with quadriplegia." Personal representative asks us to consider medical research filed as an exhibit to his response to the motion for summary judgment as evidence that a pulmonary embolism is not an "inevitable" result of quadriplegia. Personal representative claims the medical research creates a genuine issue of material fact regarding the cause of Eckstein's death. This claim is without merit. The note from the emergency room physician that Eckstein suffered a pulmonary embolism which ultimately caused cardiopulmonary arrest is consistent with the research contained in personal representative's exhibit. The chapter filed as an exhibit by personal representative regarding spinal cord injury from *Lippincott, Williams and Wilkins Physical Medicine & Rehabilitation: Principles and Practice, 4th Edition*, contains discussion of acute medical issues occurring after spinal cord injury. This discussion includes pulmonary embolism as one such issue. The article notes pulmonary embolism is a common medical complication after a spinal cord injury, "as well as an important cause of morbidity and mortality." This conclusion in the medical research does not create a genuine issue of material fact regarding whether or not Eckstein's death was caused by the January 2006 accident and resulting quadriplegia. Instead, it appears to support the conclusion that Eckstein suffered a complication and cause of death common to those suffering spinal cord injury.

In addition, personal representative attempts to assert that factors such as Eckstein's alleged life expectancy based on medical research, and Eckstein's ability to

**2.** All further statutory references are to RSMo 2000, unless otherwise indicated.

live independently for several months prior to his death create a genuine issue of material fact regarding the cause of Eckstein's death. These factors are merely argumentative and do not create a genuine issue of material fact.

As the medical research indicates, a common medical issue resulting from spinal cord injury is pulmonary embolism. The medical records reflect the emergency room physician's opinion that Eckstein suffered a "massive pulmonary embolus" which caused cardiopulmonary arrest. This led to the conclusion on the death certificate that Eckstein died from complications of his quadriplegia. There is no genuine issue of material fact in the record regarding the cause of Eckstein's death.

### 3. Conclusion

Because his death resulted from his quadriplegia, which was caused by the January 2006 accident, personal representative was barred from bringing a survivorship action on behalf of the estate as a matter of law. As a result, the trial court did not err in granting summary judgment in favor of Freeman and G & P on personal representative's survivorship action. Point three is denied.

### C. Enforcement of Hospital Lien

■ In the fourth and final point on appeal, St. John's argues the trial court erred in granting summary judgment in favor of Defendants on St. John's claim to enforce its hospital lien.

Pursuant to section 430.230, hospitals may assert a lien upon personal injury claims brought by patients admitted to the hospital and receiving care and treatment for such personal injury. Here, St. John's filed the notice of its lien on Eckstein's personal injury action, which his survivors dismissed after Eckstein's death. Eckstein's survivors subsequently filed an action for wrongful death and settled their claim for $1 million.

### 1. Statutory Right to Enforce Hospital Lien

Pursuant to section 430.250, the hospital has the right to enforce its liens by providing that any person(s), firm(s), or corporation(s), including an insurance carrier, making a payment to the patient, his attorneys, or his heirs or legal representatives as compensation for the injury is liable to the hospital for the amount the hospital is entitled to receive. Pursuant to section 430.250, the hospital may "enforce its lien by a suit at law against such person or persons, firm or firms, corporation or corporations making any such payment." Thus, St. John's filed a claim under section 430.250 to enforce its lien against Defendants for payment of expenses incurred during Eckstein's hospitalization in January 2006. However, summary judgment was properly granted in favor of Defendants on St. John's claim because the Missouri Supreme Court clearly stated hospital liens do not attach to wrongful death settlement proceeds in *American Family Mutual Insurance Co. v. Ward*, 774 S.W.2d 135 (Mo. banc 1989).

### 2. *American Family* Applies to the Present Case

In *American Family*, Ward was in a car accident and hospitalized. *American Family Mutual Insurance Co.*, 774 S.W.2d at 135. She subsequently died from her injuries and was survived by her daughter. *Id.* Prior to the filing of the wrongful death suit by her daughter, the parties agreed to settle the case. *Id.* The hospital had filed a notice of its lien, and the daughter's guardian denied payment to the hospital. *Id.* at 135–36. Ultimately the trial court allowed the hospital lien, and the Missouri Supreme Court reversed the trial court's decision. *Id.* at 138. The Court noted that the wrongful death and hospital lien

statutes are clear. *Id.* at 137. Pursuant to section 430.230, the lien attaches only to those claims "such injured person may have, maintain, or assert against the person or persons causing the injury." *Id.* at 137–38. Section 537.095 provides that the settlement of a wrongful death claim is for the "use and benefit of those who sue ... or who are entitled to sue," which pursuant to section 537.080 are decedent's survivors. *Id.* at 137. As a result of the language in these statutes, the Supreme Court concluded that because a wrongful death claim is not one brought on the part of the injured person, but instead is brought for the benefit of decedent's survivors, the hospital lien did not attach to the settlement of a wrongful death claim. *Id.* at 138.

St. John's sets forth several grounds upon which it alleges the present case is distinguishable from *American Family;* however, these arguments are without merit. In *American Family,* the Missouri Supreme Court considered the same wrongful death and hospital lien statutes as are applicable in this case, including the language in section 537.090 allowing wrongful death claimants to recover damages available to the decedent. The Court concluded the plain language of those statutes resulted in a conclusion that hospital liens do not attach to the proceeds of wrongful death settlements. *American Family Mutual Insurance Co.,* 774 S.W.2d at 138. To the extent the lien statute contemplates "heirs" or "legal representatives," in its enforcement provisions, the Court's holding in *American Family* that the language applies in situations where the injured person files suit and later dies clearly refers to the situation in which the death is not the result of the incident causing personal injury, and therefore the cause of action survives. *Id.* Such is not the case here.

St. John's asks that if we decline to distinguish this case from *American Family* to allow St. John's to enforce its lien, alternatively we should find that *American Family* was improperly decided. We are bound by the Missouri Supreme Court's decision in *American Family. Sennett v. National Healthcare Corp.,* 272 S.W.3d 237, 243 (Mo.App. S.D.2008). Moreover, as noted above, the holding in *American Family* is based upon the plain language of the wrongful death and lien statutes. The relevant statutory language has not changed since the Missouri Supreme Court's decision in *American Family.* Moreover, since *American Family,* this Court has applied the holding to affirm the trial court's dismissal of a hospital's claim to enforce a lien in *St. Anthony's Medical Center v. Metze,* 23 S.W.3d 692 (Mo.App. E.D.2000). In *Metze,* as in the present case, survivors recovered under a wrongful death claim. *Id.* at 694. Our Court noted the arguments on appeal were indistinguishable from those in *American Family,* and therefore the trial court properly applied the law pursuant to the holding in *American Family. Id.* at 695. In addition, the Court noted the legislature had not acted to change the language in the wrongful death statute nor in the hospital lien statute in light of the holding in *American Family. Id.*

As noted above, here, as in *Metze,* Eckstein's survivors recovered under a wrongful death claim. This was the proper action pursuant to statute as discussed in our analysis in Section B. Missouri law is clear—hospital liens do not attach to the proceeds of a wrongful death settlement. The arguments are indistinguishable from *American Family.* As a result, Defendants were entitled to judgment as a matter of law on St. John's claim to enforce its hospital lien. Point four is denied.

## III. CONCLUSION

The judgment is affirmed.

MARY K. HOFF, J. and LAWRENCE E. MOONEY, J., concur.